FILED
SUPERIOR COURT
OF GUAM

2019 AUG 20 PM 1: 52

CLERK OF COURT
BY:_____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| MARK E. GLASER | DOMESTIC CASE NO. DM0595-17 |
| Plaintiff | |
| vs. | **DECISION AND ORDER** |
| CHRISTINA CAMACHO GLASER | |
| Defendant. | |

## INTRODUCTION

This matter came before the Honorable Magistrate Judge Benjamin C. Sison on May 24, 2019 on a hearing for Plaintiff Mark E. Glaser's ("the Plaintiff") Motion to Set Aside Marital Settlement Agreement and Divorce Decree incorporating the Marital Settlement Agreement. The Plaintiff was represented by Jeffrey A. Cook, Esq. and the Defendant Christina Camacho Glaser ("the Defendant") was represented by Catherine Bejerana Camacho, Esq. Having reviewed the parties' briefing and heard oral argument on the issues, the Court hereby **DENIES** the Plaintiff's Motion.

## BACKGROUND

Plaintiff and Defendant were married on November 8, 1986. Plaintiff moved out of the marital residence in September of 2017. Attorney William Pesch apparently at the request of both parties, drafted a Divorce and Property Settlement Agreement ("Settlement Agreement") which the parties executed and which was incorporated into a Final Divorce Decree executed by the court, in November 2017.

ORIGINAL

Plaintiff filed the instant Motion to Set Aside the Divorce Decree and the Settlement Agreement on the basis that he was under extreme duress when the Settlement Agreement was signed which resulted in a grossly disproportionate division of marital property and debts in favor of Defendant.

In support of his claims of extreme duress, in the declarations filed with the court, the Plaintiff states that "he suffered many years of emotional abuse and mental abuse" which stemmed from a myriad of psychological and behavioral problems Defendant began experiencing since the loss of her father sometime prior to 2009 and the loss of her sister sometime in 2010. As a result of the loss of her father, and sister, Plaintiff claims that Defendant apparently "spent much time sleeping during the day and staying up at night" and "stopped doing things one would normally expect from a spouse" such as "working as a team to tackle normal household items". In addition Defendant had displayed erratic behavior such as "not eating for sixteen to twenty four hours at a time", "shopping in the middle of the night", and "having arguments with store managers about displays she didn't approve of and generally lashing out at anybody she came in contact with". Plaintiff also recalled an incident in July 2017 while traveling in California, when after an argument between the parties, the "Defendant left the house they were staying at and became lost for 12 hours." Plaintiff also claims that Defendant's psychological issues included "her complete lack of attention, that she would infrequently clean the inside of the house and would become obsessed with getting dirt out of the tiles" and that "Defendant would also show signs of hoarding and never wanting to throw any thing away resulting in mountains of clutter appearing in different parts of the house."

Plaintiff claims that as a result of Defendant's behavior and psychological issues, Plaintiff became "impossible to deal with" and that he "simply had no choice but to get away

from her and have sanity in my own life". Moreover because of these psychological and behavior issues, Plaintiff claims that "Defendant could not in good faith negotiate a marital settlement agreement and that she would not listen to any discussion about the terms" and therefore "he had no choice but to agree to her demands or face the prospect of a Court battle with an extremely psychiatrically unhealthy person".

Because he claimed he was suffering under severe emotional stress and duress at the time he signed the Settlement Agreement due to Defendant's psychological and behavioral issues, Plaintiff claims that he signed the Settlement Agreement without properly considering its inequity. The Plaintiff claims that the Settlement Agreement is grossly inequitable in its division of the assets, with approximately 66% of the couple's assets going to the Defendant, and therefore should be set aside such that the parties can renegotiate a settlement agreement that is more proper.

Specifically, under the Settlement Agreement, the Plaintiff receives 100% of the Plaintiff's Xerox Pension Plan, the 2007 Honda Civic, and one-half (50%) of the balance of the First Hawaiian Bank Account, Plaintiff's 401K with Xerox, and Plaintiff's Frequent Flyer Miles. In return the Defendant would receive 100% of the Defendant's Government of Guam Pension Plan, three separate checking accounts, the balance of their E-Trade Accounts, the 2005 Toyota Corolla, and one-half (50%) the balance of the First Hawaiian Bank Account, the Plaintiff's 401K with Xerox, and the Plaintiff's Frequent Flyer Miles. The Defendant would obtain 100% interest in the marital residence and assume all community debts associated with the property. The Defendant did not obtain any spousal support. Overall, the Settlement Agreement divides the community property and the community debt such that the Plaintiff

receives property totaling a value of approximately $470,000 and the Defendant receives property totaling a value of approximately $784,000.

## DISCUSSION

**I.     Plaintiff fails to show that he entered into the Settlement Agreement under Duress or in the alternative, that the Agreement was Grossly Inequitable.**

A divorce decree incorporating an integrated settlement agreement may not be set aside or modified, absent a showing of fraud, gross inequity, mistake, or absence of real consent. *Leon Guerrero v. Moylan,* 2000 Guam 28; *Lujan v. Lujan,* 2012 Guam 7; *Scroggs v. Scroggs,* 2014 Guam 2. Plaintiff argues that Defendant's psychological and behavioral issues that she had been experiencing for many years during the marriage caused him to himself experience extreme duress which compelled him to enter into a grossly inequitable marital settlement agreement. Duress, as contemplated by the Guam Code, refers to instances where there is a threat of unlawful force or the unlawful or fraudulent confinement of a person or property that would compel a reasonable person to act in a specific way. *See generally* 9 GCA § 7.61 (2018) and 18 GCA § 85305 (2017). Courts have extended the definition of duress to include actions which destroys contractual volition of the party seeking to set aside a contractual agreement. See *In re Marriage of Gonzalez,* 57 Ca.App.3d 736 (1976).

In the case at bar, Plaintiff simply claims that he was compelled to execute the unfavorable Settlement Agreement because Defendant refused to negotiate any terms more favorable to Plaintiff and therefore he had "no choice" but to sign the agreement or else face the prospect of a "Court battle with an extremely psychiatrically unhealthy person". Courts have held that even where the contracting party's consent was given while undergoing extreme pain

or great mental stress, the contract will not be overturned unless the contracting party was shown not to have the mental capacity to contract and that the contracting party had no reasonable perception of the nature or terms of the contract entered into. See *Howard v. Howard*, 352 N.W.2d 280 (1984). The Court does not doubt that Plaintiff in this case was undergoing considerable stress in wanting to quickly dissolve his unhappy marriage. However all marital dissolutions involve stress, and perhaps in many cases, extreme stress, on the parties. Moreover most parties are certainly hopeful and desirous of a quick and expedited dissolution proceeding. Consequently, Plaintiff's motives in wanting to execute any agreement, whether favorable or not, because of a desire to quickly terminate an unhappy marriage, is not unique or exceptional.

Plaintiff does not claim that he did not have the mental capacity to enter into an agreement with Plaintiff. In fact he states that he wanted to negotiate with Defendant but that Defendant refused or somehow was unwilling to negotiate in good faith because of her mental condition. Plaintiff claims that he had been experiencing stress due to Defendant's mental condition and behavior since 2009 when Defendant's father died. In 2017, 8 years after first experiencing such stress and perhaps worsening and increasing stress during the time period, Plaintiff asked Defendant for a divorce and moved out of the marital home. Soon thereafter, Plaintiff sought to negotiate with Defendant for a quick dissolution of their marriage. Plaintiff and Defendant sought the services of an attorney to draft a formal settlement agreement for the parties' signature. Plaintiff appears to be well educated and business savvy. Under these circumstances, the court finds no legal duress with respect to Plaintiff's execution of the parties marital settlement agreement.

Plaintiff further argues that the Settlement Agreement should also be set aside simply because the terms are grossly inequitable. An agreement will not be set aside simply because the terms of the agreement are one-sided or unfair to the other party. This is the case even if the party was not represented by counsel. See *Scroggs,* 2014 Guam 2 at ¶27. The agreement may be set aside or modified only if said agreement was grossly inequitable. See *Leon Guerrero,* 2000 Guam 28 ¶9. The parties Settlement Agreement divides the community debts and property such that the Defendant receives about 66% to the Plaintiff's 34% of the property ($784,000 to $470,000). The Plaintiff maintains that this division of property is grossly inequitable on its face. However, the Defendant claims that this division of property is not grossly inequitable, citing to the thirty-one years of marriage between the parties, her religious beliefs which make divorce difficult to reconcile, and the fact that she made no claim for, and effectively waived, spousal support in exchange for an unequal distribution of the assets. Furthermore, the Defendant claims that considering her history of unemployment, psychiatric issues, and standard of living, there would have been an award of spousal support should she have requested it, but that she accepted the current division of property in lieu of spousal support.

Under *Scroggs*, this Court has recognized that a spouse may waive all maintenance and support, or waive it as provided in an agreement, in exchange for a more favorable settlement of community property. 2014 Guam 2 ¶¶ 20-21. Therefore, considering that the Defendant would likely have been entitled to spousal support, the Defendant did not pursue any right to spousal support, and the parties entered into an agreement for an unequal distribution of property, the Court finds that the Settlement Agreement was an implied agreement between the parties such that spousal support could be avoided.

Furthermore, the Court finds that the division of property in the Settlement Agreement is not grossly inequitable. Although the Plaintiff is only receiving approximately thirty-four percent (34%) of the community property, the Plaintiff negotiated with the Defendant over the course of two months before arriving at the terms of the Settlement Agreement, and the Plaintiff received some value in the quick dissolution of his marriage, no ongoing payment requirements to the Defendant, and a Settlement Agreement in which he is not required to pay spousal support. Moreover, the fact that the Plaintiff is only receiving 34% of the community property is not grossly inequitable on its face. See *Klabunde v. Klabunde*, 194 Neb. 681, 681, 234 N.W.2d 837, 838 (1975) (finding no gross inequity when total division of assets is a 33% to 67% split) and *Crawford v. Crawford*, No. 259108, 2006 WL 1330321 (Mich. Ct. App. May 16, 2006) (finding no gross inequity with 39% to 61% split). Considering the parties' ongoing negotiations, and the value that the Plaintiff likely gained from having a faster divorce where he is not required to make ongoing payments, the Court finds that the division of community property under the Settlement Agreement is not grossly inequitable.

II. **The circumstances surrounding the Plaintiff's agreeing to the Settlement Agreement are not exceptional or extraordinary such that relief is warranted under GRCP 60(b)(6).**

The Plaintiff moves under Rule 60(b)(6) of the Guam Rules of Civil Procedure for relief from the Settlement Agreement. The Guam Supreme Court in *Mariano v. Surla*, stated that for relief under GRCP 60(b)(6) there must be "exceptional or extraordinary circumstances which are not addressed by the other subsections of the rule." 2010 Guam 2 ¶¶ 33-34 (citing *Brown v. Eastman Kodak Co.*, 2000 Guam 30 ¶ 14). In addition to showing an extraordinary set of facts, the movant must also show "a meritorious case, that substantial injustice would otherwise

result, and that it would be appropriate to set aside default so that the case can proceed to the merits." *Id.* at ¶ 25. The Plaintiff argues that the circumstances in this case rise to exceptional or extraordinary circumstances as his need to quickly divorce the Defendant due to her psychological and behavioral issues compelled him him to agree to the terms of the unfavorable Settlement Agreement. As we indicated in the above analysis, the claimed extreme stress experienced by Plaintiff do not rise to the level of legal duress and do not constitute exceptional or extraordinary circumstances. Also because the terms of the marital settlement agreement are not grossly disproportionate, allowing the terms of the marital settlement agreement to stand will not result in substantial injustice to Plaintiff. The Court finds that relief under GRCP 60(b)(6) is not warranted.

## CONCLUSION

For the reasons set forth above, the Court hereby:

1. **DENIES** the Plaintiff's Motion to Set Aside Marital Settlement Agreement and Divorce Decrees Pursuant to GRCP Rule 60(b);
2. **ORDERS** the Plaintiff to comply with the terms and conditions of the Marital Settlement Agreement and Divorce Decrees; and
3. **ORDERS** the Plaintiff to pay the Defendant's attorneys' fees and costs with respect to this motion.

**IT IS SO ORDERED** ___AUG 2 0 2019___.

SERVICE VIA COURT BOX

I acknowledge that a copy of the original hereto was placed in the court box of: Catherine Camacho
J-Cook
Date: 8/20 Time: 5:00pm
QA
Deputy Clerk, Superior Court of

_____
**HONORABLE BENJAMIN C. SISON**
**Magistrate Judge, Superior Court of Guam**

Page 8 of 8